1  LATHAM & WATKINS LLP
      Daniel Scott Schecter (Bar No. 171472)
2       *daniel.schecter@lw.com*
   10250 Constellation Boulevard, Suite 1100
3  Los Angeles, CA. 90067
   Telephone: +1.424.653.5500
4  Facsimile: +1.424.653.5501

5  LATHAM & WATKINS LLP
      Matthew A. Brill (admitted *pro hac vice*)
6       *matthew.brill@lw.com*
      Andrew D. Prins (admitted *pro hac vice*)
7       *andrew.prins@lw.com*
      Alexander L. Stout (admitted *pro hac vice*)
8       *alexander.stout@lw.com*
   555 Eleventh Street, NW
9  Washington, D.C. 20004
   Telephone: +1.202.637.2200
10 Facsimile: +1.202.637.2201

11 Attorneys for Defendants Charter
   Communications, Inc. and Spectrum
12 Management Holding Company LLC

13

14              UNITED STATES DISTRICT COURT

15              CENTRAL DISTRICT OF CALIFORNIA

16                    SOUTHERN DIVISION

17

| | |
|---|---|
| ELIZABETH HART and LE'ROY ROBERSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC. and SPECTRUM MANAGEMENT HOLDING COMPANY LLC,<br><br>Defendants. | Case No. 8:17-CV-00556 DOC (RAOx)<br><br>**DECLARATION OF CHRISTINE FLORES IN SUPPORT OF DEFENDANTS CHARTER COMMUNICATIONS, INC. AND SPECTRUM MANAGEMENT HOLDING COMPANY LLC'S MOTION TO COMPEL ARBITRATION AND STAY PLAINTIFFS' CLAIMS**<br><br>Hearing Date: September 25, 2017<br>Time: 8:30 a.m.<br>Judge: Honorable David O. Carter<br>Courtroom: 9th Floor, Courtroom 9D |

I, CHRISTINE FLORES, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am an employee of Charter Communications, Inc. ("Charter"). In that capacity, I perform job duties that support the operations of Charter.

2. Plaintiffs formerly were customers of Time Warner Cable Inc. ("TWC"), which merged with a subsidiary of Charter in May 2016. Charter, TWC, and Spectrum Management Holding Company LLC are collectively referred to herein as "Spectrum."[1]

3. I serve as a Manager, Legal Services for Charter. As part of my role, and in connection with the merger between Charter and TWC, I am familiar with many of the business practices of the legacy and current Spectrum entities. For example, as part of my job duties, I am responsible for maintaining records of customer opt outs from provisions of Spectrum's subscriber agreements. I am therefore familiar with the process by which the Spectrum entities have disseminated their subscriber agreements to their customers. I am also familiar with the content of Spectrum's billing records and work order records, the methods of searching those records, and the interpretation of those records. I routinely view, search, and interpret those records while performing my job duties. Those records are recorded and stored at or about the time of the events they document, and are recorded and maintained in the ordinary course of business by Spectrum.

4. This declaration is based on my personal knowledge and review of documents maintained in the ordinary course of business by Spectrum. If called and sworn as a witness, I could and would competently testify to the matters articulated herein.

5. Plaintiff Elizabeth Hart has been a Spectrum customer since August 2006. Continuously since then, Spectrum has provided Ms. Hart with broadband Internet

---

[1] Where relevant, I identify herein certain pre-merger documents or practices of TWC as "legacy-TWC."

1  access services at her home in Orange County, California, and Ms. Hart has
2  continued to pay her monthly billing statements.
3  6.      Plaintiff Le'Roy Roberson has been a Spectrum customer since July 2013.
4  Continuously since then, Spectrum has provided Mr. Roberson with broadband
5  Internet access services at his homes in Los Angeles County, California, and Mr.
6  Roberson has continued to pay his monthly billing statements.
7  7.      In order to receive any of Spectrum's residential services, a customer must
8  agree to a subscriber agreement known as the Residential Services Subscriber
9  Agreement (the "RSSA").
10 8.      **Exhibit A** is a true and correct copy of the RSSA for legacy-TWC Spectrum
11 customers (like Plaintiffs) in effect between January 2014 and April 2016, which
12 remained unchanged during that period (the "2014 RSSA").
13 9.      **Exhibit B** is a true and correct copy of the RSSA for legacy-TWC Spectrum
14 customers in effect between April 2016 and June 14, 2017, which remained
15 unchanged during that period (the "2016 RSSA").
16 10.     The current version of the RSSA is always available online at
17 https://www.spectrum.com/policies/residential-terms.html and
18 https://www.spectrum.com/policies/terms-of-service.html.  Beginning prior to
19 2006, and continuing through today, the operative version of the RSSA for legacy-
20 TWC was also made available to current and prospective customers alike at all
21 times at http://help.twcable.com/html/twc_sub_agreement.html and
22 http://help.twcable.com/html/policies.html (although today, those addresses now
23 re-direct to the respective, above-noted addresses at spectrum.com).  Beginning
24 prior to 2014, and continuing through today, the operative version of the RSSA for
25 legacy-TWC was also made available to current and prospective customers alike at
26 all times at http://help.twcable.com/policies.html (although today, that address now
27 re-directs to the above-noted "terms-of-service" address at spectrum.com).
28 11.     The current RSSA, and the previous versions of the legacy-TWC RSSA,

beginning prior to 2006, have all contained an arbitration agreement.

12.    In addition to making the RSSA available online, it was legacy-TWC Spectrum's standard practice beginning prior to 2006, and continuing beyond 2015, to provide new legacy-TWC residential customers with a physical "Welcome Kit" that included a copy of the then-current RSSA.

13.    Consistent with the terms of predecessor legacy-TWC RSSAs dating back prior to 2006, the 2016 RSSA in effect at the time Plaintiffs filed this lawsuit provides that a customer becomes bound to the RSSA either by signing a work order, or by using Spectrum's services.

14.    Spectrum has long provided its customers the ability to opt out of the legacy-TWC RSSA's arbitration provision, provided they do so within 30 days of the arbitration provision becoming effective.

15.    For example, the legacy-TWC RSSA that came into effect in April 2010 (the "2010 RSSA") provided in part that, "You may opt out of this agreement's arbitration provision. If you do so, neither you nor TWC can require the other to participate in an arbitration proceeding. To opt out, you must notify TWC in writing within 30 days of the date that you first became subject to this arbitration provision."

16.    In 2010, in accordance with the terms of the 2010 RSSA, Ms. Hart had the opportunity to opt out of the then arbitration agreement.

17.    Likewise, upon initiating service in 2013, in accordance with the terms of the 2010 RSSA, Mr. Roberson had the opportunity to opt out of the then arbitration agreement.

18.    In the course of my regular duties I maintain a list of all persons who have opted out of the arbitration agreements contained in all versions of the RSSA. That list contains the customer's name, address, account number, and date of the opt-out request (to the extent that the customer has provided these details). Entries are, and have been, added to the list whenever Spectrum receives an opt out request.

19. At no time prior to March 2017 did Ms. Hart or Mr. Roberson provide Spectrum with any notification of their desire to opt out of the arbitration agreement.

20. In early 2014, Spectrum revised the terms of the legacy-TWC RSSA. That revised version (the 2014 RSSA) contained a provision providing, among other things, that "You may opt out of this Agreement's arbitration provision. If you do so, neither you nor TWC can require the other to participate in an arbitration proceeding and each us can sue the other in a court of law. To opt out, you must notify TWC using one of the methods described in Section 16, below, within 30 days of the date that you first became subject to this arbitration provision…."

21. On or around March 7, 2014, Spectrum sent Ms. Hart a billing statement for March 2014 (March 15 to April 14, 2014) by U.S. Mail. A true and correct copy of this billing statement is attached as **Exhibit C** to this declaration. Ms. Hart paid this billing statement and continued to use Spectrum's services.

22. On or around March 10, 2014, Spectrum sent Mr. Roberson a billing statement for March 2014 (March 20, 2014 to April 19, 2014) by U.S. Mail. A true and correct copy of this billing statement is attached as **Exhibit D** to this declaration. Mr. Roberson paid this billing statement and continued to use Spectrum's services.

23. The March 2014 billing statements sent to Ms. Hart and Mr. Roberson contained the following text:

> You have a new [Spectrum] subscriber agreement, which contains an arbitration clause, a clause that may limit the time you have to bring a claim against us & other important terms. Review it &, if you wish, 'opt out' of some of the clauses at
> http://help.twcable.com/policies.html.

24. On or around May 7, 2014, Spectrum sent Ms. Hart a billing statement for May 2014 (May 15, 2014 to June 14, 2014) by U.S. Mail. A true and correct copy

of this billing statement is attached as **Exhibit E** to this declaration. Ms. Hart paid this billing statement and continued to use Spectrum's services.

25. On or around May 10, 2014, Spectrum sent Mr. Roberson a billing statement for May 2014 (May 20, 2014 to June 19, 2014) by U.S. Mail. A true and correct copy of this billing statement is attached as **Exhibit F** to this declaration. Mr. Roberson paid this billing statement and continued to use Spectrum's services.

26. The May 2014 billing statements sent to Ms. Hart and Mr. Roberson contained the following text:

> NEW [SPECTRUM] SUBSCRIBER AGREEMENT It contains an arbitration clause, a clause that may limit the time you can bring a claim against us & other important terms. Review & 'opt out' of some of the clauses if you wish at
> http://help.twcable.com/policies.html

27. Spectrum retains information regarding historical billing statements in the ordinary course of business. Due to a limitation in the data processing software that imports billing statement information into a certain archival database, special characters are sometimes rendered as "." marks when the data is later displayed. This technical limitation does not impact the version of the billing statement that is sent to a customer.

28. Ms. Hart and Mr. Roberson's archived billing statements, which are attached as Exhibit C through Exhibit F to this Declaration, are impacted by the technical limitation described above, but that limitation would not have impacted the actual billing statements sent to Ms. Hart and Mr. Roberson.

29. These same notifications, relating to the change in the RSSA's terms, and the existence of the arbitration agreement, discussed in the preceding paragraphs 21-26, were provided to numerous other legacy-TWC Spectrum subscribers in March and May 2014, respectively, and Spectrum generated validation images of those notifications. These validation images show how the billing statement would

have appeared when sent to the customers—*i.e.*, that the actual billing statements were not impacted by the technical limitation described in paragraph 27.

30. A true and correct copy of a validation image of a March 2014 billing statement, which includes the above-quoted notification language, is attached as **Exhibit G** to this declaration.

31. A true and correct copy of a validation image of a May 2014 billing statement, which includes the above-quoted notification language, is attached as **Exhibit H** to this declaration.

32. In 2016, Spectrum made some minor updates to the RSSA. Spectrum posted the 2016 RSSA to its website in April 2016.

33. Separate from their acceptance of the RSSA through their use of Spectrum's services, Spectrum customers also agree to abide by the terms of the RSSA at the time they sign up for service, and during subsequent service visits, by signing Spectrum's standard work orders. Many work orders are archived by Spectrum in the ordinary course of business.

34. In April 2010, Spectrum disseminated a new RSSA (*i.e.*, the 2010 RSSA) to its legacy-TWC subscribers on its website, and informed its subscribers of the new RSSA in their billing statements. **Exhibit I** is a true and correct copy of the 2010 RSSA effective between April 2010 and January 2014 for legacy-TWC customers, which remained unchanged during that period.

35. A true and correct copy of a signed work order for service on Mr. Roberson's Spectrum account, dated as of July 20, 2013, is attached as **Exhibit J** to this declaration. That work order provided that, by signing, the subscriber was agreeing to the terms of the 2010 RSSA, including the then-operative arbitration agreement.

36. A true and correct copy of an excerpt of a signed work order for service on Ms. Hart's Spectrum account, dated as of August 9, 2013, is attached as **Exhibit K** to this declaration. That work order provided that, by signing, the subscriber was

agreeing to Spectrum's terms and conditions (that is, the 2010 RSSA), which included the then-operative arbitration agreement.

37. On or around April 7, 2010, Spectrum sent Ms. Hart a billing statement for April 2010 (April 15, 2010 to May 14, 2010) by U.S. Mail. A true and correct copy of this billing statement is attached as **Exhibit L** to this declaration. The first page of this billing statement stated: "You have a new Time Warner Cable subscriber agreement, which contains an arbitration clause and other important terms. You can review the new agreement and, if you wish, 'opt out' of the arbitration clause at http://help.twcable.com/html/policies.html." Ms. Hart paid this billing statement and continued to use Spectrum's services.

38. Spectrum has retained archival records of many of Ms. Hart and Mr. Roberson's other historical, signed work orders relating to service calls at their residences. True and correct copies of several of Ms. Hart and Mr. Roberson's work orders are attached as **Exhibit M, Exhibit N,** and **Exhibit O** to this declaration.

39. It has long been Spectrum's policy, beginning prior to 2010, that the "signature" field of the work order is not to be filled out or edited by any person other than the subscriber (or their authorized representative).

40. On March 15, 2017, both Ms. Hart and Mr. Roberson sent letters to Spectrum in which they purported to opt out of the arbitration provision in the 2016 RSSA.

41. On June 21, 2017 and July 10, 2017, respectively, Ms. Hart and Mr. Roberson again sent letters to Spectrum, in which they purported to opt out of the arbitration provision in Spectrum's most recent Residential Subscriber Services Agreement, which came into effect on June 15, 2017.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


1 | Executed on July 21, 2017
2 | at St. Louis, MO

                                               *C Flores*
                                               Christine Flores